### McGRATH et al. v. NOLAN et al.
#### No. 7946.

Circuit Court of Appeals, Ninth Circuit.
May 5, 1936.

William P. Lord and T. Walter Gillard, both of Portland, Or., for appellant.

A. W. Norblad and Walter Norblad, both of Astoria, Or., and M. B. Meacham, of Portland, Or., for appellees Michel Nolan et al.

Plowden Stott, of Portland, Or., for appellee American Surety Co.

Alex G. Barry, of Portland, Or., for appellee National Surety Corp.

748

John Lichty, of Portland, Or., for appellee Fidelity & Deposit Co.

Before DENMAN, MATHEWS, and HANEY, Circuit Judges.

DENMAN, Circuit Judge.

Appellant filed a libel in personam against Michel Nolan, alleging that he, Nolan, was employed to pilot the motorship Childar and that by reason of his negligence as such pilot in crossing the Columbia river bar, the ship grounded on Peacock Spit, and that as a result of the impact the appellant Patrick E. McGrath, who was a seaman on board the motorship, was seriously injured, for which injuries he claims damages in the sum of $50,000. The libel alleges that the respondents other than Nolan, and other than certain surety companies who were also joined, were members of the Columbia River Bar Pilots Association, and that this association was a copartnership having its principal place of business at Astoria, Or. Because of this alleged relationship, it was sought to hold all the pilots belonging to the association, and their respective surety companies, for the negligence of Michel Nolan. Exceptions to the libel were filed on behalf of all respondents. The exceptions were sustained and a final decree entered dismissing the libel. This appeal followed.

The first question is whether or not the injured seaman was entitled to maintain an action against the pilot for compensatory damages for injuries caused by the negligence of the pilot while in charge of the motorship Childar. Appellant McGrath predicates his right to recover upon the general maritime law of the United States and not under the Jones Act (41 Stat. 1007, c. 250, § 33, 46 U.S.C.A. § 688). He says:

"In this instant case we contend that the libelant McGrath brings this suit under the general maritime law of the United States and decisions applicable thereto and not under the Jones Act."

■ This narrows the issue to the question of whether, before the enactment of the Jones Act, a seaman was entitled to recover compensatory damages from a statutory state licensed pilot for injuries occasioned by the latter's negligence. The vessel may accept a pilot if it "desires" one, but if spoken by a pilot must pay pilotage fees even if the service is not desired or accepted. Oregon Code 1930, §§ 65-323, 65-327. When this creature of statute functions on the vessel, his relation to the master and crew is sui generis.

■ We see no reason to deny such recovery. The libel plainly sets out negligent navigation on the part of Pilot Nolan, which negligence resulted in the injuries complained of. Negligence resulting in injury is an actionable tort in maritime as well as in common-law matters.

"Nor is the term 'tort,' when used in reference to admiralty jurisdiction, confined to wrongs or injuries committed by direct force, but it includes wrongs suffered in consequence of the negligence or malfeasance of others, *where the remedy at common-law is by an action on the case*. Philadelphia, W. & B. R. Co. v. Philadelphia & Havre de Grace Steam Towboat Co., 23 How. 209, 214, 215 [16 L.Ed. 433]." (Italics supplied.) Leathers v. Blessing, 105 U.S. 626, 630, 26 L.Ed. 1192.

Pilots are not exempt. Guy v. Donald (C.C.A.4) 157 F. 527, 530, 14 L.R.A.(N.S.) 1114, 13 Ann.Cas. 947; Deering & Sons v. Targett (1913) 1 K.B. 129, 131.

The appellees seek to avoid this obvious point by a reference to the principle that under general maritime law a seaman has no right of action against ship or owner for physical injury occurring in the course of duty unless the injury is caused by the unseaworthiness of the ship, and that in all other cases he is entitled only to maintenance and cure and to his wages for the continuance of the voyage. The Osceola, 189 U.S. 158, 23 S.Ct. 483, 47 L. Ed. 760; Chelentis v. Luckenbach S. S. Co., 247 U.S. 372, 380, 38 S.Ct. 501, 62 L.Ed. 1171; Baltimore S. S. Co. v. Phillips, 274 U.S. 316, 47 S.Ct. 600, 71 L.Ed. 1069; Messel v. Foundation Co., 274 U.S. 427, 47 S.Ct. 695, 71 L.Ed. 1135; Pacific S. S. Co. v. Peterson, 278 U.S. 130, 49 S.Ct. 75, 73 L.Ed. 220; Lindgren v. United States, 281 U.S. 38, 47, 50 S.Ct. 207, 74 L.Ed. 686; Cortes v. Baltimore Insular Line, 287 U.S. 367, 53 S.Ct. 173, 77 L.Ed. 368; Warner v. Goltra, 293 U.S. 155, 55 S.Ct. 46, 79 L.Ed. 254. See, also, The Arizona v. Anelich, 56 S.Ct. 707, 80 L.Ed. ——, decided by the Supreme Court April 27, 1936.

None of these cases is in point. They all deal with the liability of the ship or her owners to a seaman injured in the performance of his duties. It is the liability of the ship or her owners that is limited to

wages, maintenance, cure, and compensation for injury due to unseaworthiness. There is nothing in any of the cases cited to us by the appellees, nor in any case which our own research has uncovered, which throws the slightest doubt upon the elementary principle that an immediate tort-feasor is liable to those proximately injured by his tortious conduct.

To the argument that this statutory pilot whose command of the vessel is limited to the navigation thereof within the waters of his license, becomes the master of the vessel and hence is identified with the owner, and hence not liable to the sailor for his negligence, there are two answers: (1) The master himself is not identified with the owner. If he were, the owner would be liable for the master's negligence to his crew, for the owner *is* liable if the seaman is injured by the *owner's* personal negligence. Such liability would attach, for instance, if the owner negligently ordered the captain to do something which harmed the seaman. (2) While the pilot has command of the navigation of a vessel, he is not her master. The Oregon, 158 U.S. 186, 195, 15 S.Ct. 804, 39 L.Ed. 943. Even while on the bridge he is subject to removal by the master and, according to Dr. Lushington, the master may insist on the pilot taking proper precautions. Id., 158 U.S. 186, 195, 15 S.Ct. 804, 39 L.Ed. 943. He is always under the command of the master. United States v. Jacksonville Co. (C.C.A.5) 18 F.(2d) 39, 40.

Even if the statutory state pilot stood in the shoes of the master, it is no bar to suit. The British High Court of Admiralty held the captain liable in tort to a seaman for excessive punishment. This was in 1824, when seamen could be flogged by the captain. The flogging was held in the scope of his employment. The sailor was awarded damages in the amount of one hundred pounds, together with costs. The Agincourt, 1 Hagg.Adm. 271, 166 Eng.Rep. 96. See The Whisper (C.C.A.6) 268 F. 464.

The pilot is not a fellow servant of other members of the crew and can recover from the owner for their negligence. Smith v. Steele, L.R., 10 Q.B. 125. If he were considered a mere fellow servant of the seamen, he is no less liable. Northern Pac. R. Co. v. Dixon, 194 U.S. 338, 342, 24 S.Ct. 683, 48 L.Ed. 1006.

The pilot may recover from the master for the master's tort in using too much force in ejecting him from the bridge. Beataugh v. Nicholson, 2 Fed.Cas. 1198, No. 1,194. Surely if the pilot can recover from the master for the master's tort, the seamen can recover from the pilot for the pilot's tort.

It follows that the exceptions of respondent Nolan and of all the other respondents, in so far as these latter were based upon the alleged failure to state a cause of action against Nolan, were improperly sustained.

We now consider the exceptions to the libel taken by respondents Ash, Astrup, Hall, Hirsch, Langkilde, Lofstedt, and Rankin. In the language of the libel, these respondents were:

" * * * Regularly licensed Columbia River Bar Pilots by the State of Oregon and the United States Government, each licensed to pilot ships from Astoria, Oregon to sea and return, said persons being hereinafter referred to collectively as 'pilots,' and that at all times hereinafter mentioned the said pilots constituted the membership of a partnership and unincorporated association, doing business under the name and style of Columbia River Bar Pilots Association, with its and their principal office and place of business at Astoria, Oregon, and that said pilots operated and maintained said association for their mutual financial gain and benefit and did equally share the profits and losses of the partnership, said association having the exclusive direction and control as to which of its members should pilot any particular vessel and having exclusive control of the pilot services of its members."

It was further alleged that the association maintained facilities for the accurate and timely determination of existing and prospective weather conditions on the coast; and that such facilities and information are available to the pilots immediately prior to the time at which they assume pilotage duties at Astoria.

Again it is stated in the libel:

" * * * The motorship steered its way to Astoria, Oregon, where the master of the motorship dropped the river pilot and picked up a bar pilot, said bar pilot being respondent Michel Nolan, and said master thereupon directed that said motorship proceed to sea and said motorship left the vicinity of Astoria, Oregon, proceed-

ing to sea \* \* \*; the services of said respondent Nolan being secured through the said 'pilots' association and said 'pilots' association office at Astoria, Oregon, and thereupon said pilot Nolan entered upon the performance of his duties as pilot of said motorship. \* \* \*"

In order to determine whether sufficient connection is shown between Nolan and the association to hold the members of the latter liable, we must survey the nature of the negligence charged in the libel. It was first alleged that Nolan and the other respondent pilots were negligent in that they knew or should have known that by reason of the Childar's carrying too heavy a load and by reason of her improper trimming, she was unseaworthy in the weather conditions then obtaining. All the other acts of negligence charged were delicts of omission or commission on the part of Nolan after he had taken over the ship.

■ The libel fails to state a cause of action against the respondent pilots other than Nolan. For the alleged negligent navigation on the part of Nolan after he took over the ship, the pilots' association could be held answerable only upon the principle of respondeat superior as applied to partnerships. Partners are liable for torts inflicted upon third persons by other members of the partnership provided such torts occur in the course of partnership business. McIntyre v. Kavanaugh, 242 U. S. 138, 139, 37 S.Ct. 38, 61 L.Ed. 205; James-Dickinson Co. v. Harry, 273 U.S. 119, 123, 47 S.Ct. 308, 71 L.Ed. 569. But the libel in this case does not set forth that Nolan was acting within the scope of partnership business at the time in question. It alleges that the pilots were members of a partnership which was "doing business," and that the pilots maintained the association "for their mutual financial gain and benefit and did equally share the profits and losses of the partnership." Plainly, these allegations do not set forth the nature of the business done by the partnership and contain no inference that the business done by the partnership as partnership was the piloting of vessels. The inference, if there is any, is rather that an individual member, while piloting a vessel, was under contractual relation with the vessel for his own account alone; and that the business done by the pilots in partnership consisted of matters of common interest or gain any number of which may engage the time and attention

of professional or trade associations apart from the individual contracts of their membership. See Guy v. Donald, 205 U.S. 399, 406, 27 S.Ct. 63, 51 L.Ed. 245.

■ The defect in allegation is not remedied by the statement that the association had the exclusive direction and control as to which of its members should pilot any particular vessel, inasmuch as such direction and control do not make the pilotage contract any less a contract of the individual pilot alone; nor by the statement that the association had "exclusive control of the pilot services of its members," inasmuch as such statement is too vague, general, and indefinite to be susceptible of specific meaning.

■ So much for respondeat superior. But the libel charges, inter alia, that the members knew or should have known that the Childar, by reason of her improper loading and trimming, was unseaworthy in the prevailing weather conditions. We assume that in this connection the libel is proceeding upon the principle of respondeat superior and is not seeking to charge the association generally with personal direct negligence in allowing the Childar to proceed to sea in an unseaworthy condition. Assuming, however, that such direct negligence is sought to be alleged, the charge cannot prevail. There is no allegation that the member pilots, other than by selecting some one other than Nolan, could have prevented Nolan from taking the ship out, unless we are to read a broad inference from the vague statement that the association had exclusive control over the pilot services of its members. Apart from this, however, there are no facts stated to justify the broad conclusion that each one of the individual pilots knew or should have known the condition of the Childar. It certainly cannot be a customary practice, at least not to the extent of judicial notice, for every member of a pilots' association personally to inspect a ship before one of their number takes it out.

Apart from the principles we have discussed, the only manner in which negligence on the part of the association could be predicated is upon the theory that Nolan was an incompetent pilot, known to be so by the other members of the association; in which case the others would be negligent in allowing him, rather than another, to pilot the Childar. This form of negligence, however, was not alleged.

The exceptions on the part of the pilot respondents other than Nolan, and upon the part of their respective surety companies, were properly sustained.

There remains for consideration the charged liability of respondent Fidelity & Deposit Company of Maryland, a corporation, surety upon the pilot bond of Michel Nolan. The libel sets forth the statutory bond required by the laws of Oregon and alleges that it was duly executed and deposited with the Board of Pilot Commissioners. We take judicial notice of the laws of Oregon governing these bonds. Oregon Code 1930, § 65-317, as amended by Laws 1931, p. 519, § 4, provides:

"Before receiving his license a pilot must deliver to the secretary an official undertaking in the sum of $3,000, signed by himself and two sureties, and approved by the president of the board, which undertaking shall be substantially in the following form:

"'Whereas A. B. * * * was duly licensed as a pilot; * * * he, the said A. B. for himself, and C. D. and E. F. as his sureties, hereby do undertake that if the said A. B. shall fail or neglect to faithfully and diligently perform his duties as such pilot, then we or either of us will pay to the state of Oregon, for the use of whom it may concern, the amount of all damage or loss caused by such neglect or failure, not exceeding $3,000.'"

Oregon Code 1930, § 65-322 provides:

"If a vessel or her cargo which is under the charge of a pilot is injured or lost, by reason of the negligence or incompetency of such pilot, he and his sureties in his official undertaking are liable to the parties interested for the damage caused thereby."

It is the company's contention that this last-quoted section limits the benefits of the bond to persons who are injured by reason of damage or loss to the vessel or her cargo, a category which would, of course, exclude the libelant. Such an interpretation of the obligation of the bond is a reasonable one, in view of the two sections of the statute. It is also within reason to interpret section 65-317 as imposing a broader liability upon the surety than is provided for by section 65-322, and

to be read not in pari materia with the latter. Here is an ambiguity which must be resolved in favor of the surety in keeping with the rule that surety contracts, particularly those required by statute, are to be strictly construed in favor of the obligors. Leggett v. Humphreys, 21 How. 66, 75, 16 L.Ed. 50; Commercial Nat. Bank of Washington v. London & Lancashire Indemnity Co., 56 App.D.C. 76, 10 F.(2d) 641, 642; Moody v. McGee (C.C.A.) 41 F.(2d) 515; State ex rel. Hagquist v. United States Fidelity & Guaranty Co., 125 Or. 13, 21, 265 P. 775.

We conclude that the exceptions of respondent Fidelity & Deposit Company of Maryland were properly sustained.

The appellees have moved to dismiss the appeal in this cause on the grounds (1) that the opinion of the District Court was not included in the Apostles on Appeal and (2) that the appellants' brief was served on appellees less than thirty days before the case was argued. As to the first ground, the motion is not well made, inasmuch as it does not appear that the District Court ever wrote an opinion. Opinions are not necessarily written in connection with decrees dismissing libels for failure to state a cause of action. As to the second ground, appellants' proctor filed an affidavit to the effect that he and his colleague had been strenuously occupied in work and travel pending the appeal and that they prepared their brief in as short a time as was possible. The brief was served November 16, 1935, and the cause came on for a hearing in this court on December 5. The motion to dismiss does not allege that appellees' cause was injured for lack of the full thirty days for their proctors to examine the appellants' brief. In absence of allegation of injury, we cannot presume that any was done. In the absence of injury, we do not consider a minor violation of rule 24 sufficient ground upon which to deprive appellants of their day in court on the appeal. The motion to dismiss the appeal is denied.

The cause is remanded to the District Court with orders to overrule the exceptions to the libel on behalf of appellee Michel Nolan. As to all other appellees, the decree below is affirmed.