## NORMAN v. WABASH R. CO.

(Circuit Court of Appeals, Sixth Circuit. May 28, 1894.)

### No. 163.

MASTER AND SERVANT—INJURIES TO SERVANT—CONTRIBUTORY NEGLIGENCE.

In an action against a railway company for personal injuries to an employé, his evidence showed that, when he was at work in defendant's sheds, and was kneeling to look for marks on a bale of cotton, moved from the wall on a truck, its weight depressed the ends of loose boards in the floor, causing a bale standing at their other ends to fall on and injure him; that the floor had been in bad repair for several years; but he denied that he knew of the defects in the floor, and, on his testimony, his ignorance of its condition was possible and reasonable. *Held,* that he had the right to submit to the jury the issue whether he was negligent or not.

In Error to the Circuit Court of the United States for the Eastern District of Michigan.

This was an action by Frank Norman against the Wabash Railroad Company for personal injuries. At the trial the judge directed the jury to find for defendant, and judgment for defendant was entered on the verdict. Plaintiff brought error.

Frank Norman, the plaintiff in error and the plaintiff below, was employed by the Wabash Railroad Company, the defendant, in its freight sheds in Detroit. The freight sheds were divided into two parts by railway tracks. The north part was called the "city side" and the south part was called the "dock side." Norman's duties consisted of examining the tags or marks upon each package of merchandise and calling out the same to the checker, who made a record of them. This was done at the time when the packages were moved. The floor of the north side of the shed had been in bad condition for several years, the boards were loose and the floor, under pressure, sagged in the middle. The stringers under the boards were defective, and the foundations of

the floor were generally out of repair. The evidence for the plaintiff tended to show that Norman worked all the time on the dock or south side of the freight sheds, and that he was sent over to the city or north side at rare intervals only; that he did not know that the floor of the north side was in bad condition; that at 9 o'clock at night he went over to that side with a foreman and a truck to move bales of cotton which were standing against the wall; that, after having removed all but two of the bales, he and the truckman approached one of the two remaining bales, and pulled it down on to the truck; that Norman could not find the tag or mark on the upper part of the bale, and, in the dimly lighted building, stooped to find it below; that the foreman called to the truckman to pull the bale toward the middle of the shed in order that Norman might get more light; that the truckman did pull the bale several feet away from the bale which remained standing; that Norman kneeled to examine the lower part of the bale on the truck, when the remaining bale toppled and fell upon Norman's foot, inflicting a severe injury. The evidence tended to show that the weight of the loaded truck and the truckman on one end of the loose floor boards had depressed them, and thus lifted the bale at the other end of the boards, toppling it over. It was in evidence that the freight agent of the company and the division superintendent had visited the freight house, and had examined the condition of the floor. The foreman, called by the defendant, testified that the bale which ultimately fell upon Norman's foot had fallen before, and had been replaced by Norman, and that he then deliberately placed himself so near the bale that when it fell again it necessarily injured him. He also stated that Norman was sent into the north side of the freight sheds for an hour or two every day, and that he must have been there several hundred times. There was no evidence to show what the duties of the freight agent or of the division superintendent were, or that they were charged with the repair and preservation of the freight house. The circuit court, at the conclusion of the evidence, on a motion by the defendant, instructed the jury to return a verdict for defendant on the ground that the plaintiff was guilty of contributory negligence, because he had as full opportunity as the defendant to know the dangerous condition of the floor, and yet continued to work upon it without complaint.

E. S. Grece, for plaintiff.

Alfred Russell, for defendant.

Before TAFT and LURTON, Circuit Judges, and SEVERENS, District Judge.

TAFT, Circuit Judge, after stating the case as above, delivered the opinion of the court.

The law governing the reciprocal duties of employer and employé with reference to the safe condition of the place where the employé is to work, or of the machinery and tools with which he is to do his work, is well settled. It is the duty of the employer to exercise ordinary care to provide and maintain a reasonably safe place in which the employé is to perform his services, so that the employé shall not be exposed to unnecessary and unreasonable risks. The employé has the right to presume, when directed to work in a particular place, that reasonable care has been exercised by his employer to see that the place is free from danger, and, in reliance upon such presumption, may discharge his duties in such place, unless there are obvious dangers which would lead a reasonably prudent employé either to refuse to work in the place, or to make complaint of the same to his master. If, however, the danger is not actually known to the employé, or would not become known to an employé of reasonable prudence performing the duties imposed on him, he cannot be charged with contributory negligence in the

happening of an injury to him by reason of the condition of the place in which he works.

The law on the subject has been most clearly and comprehensively stated by Judge Sanborn, speaking for the circuit court of appeals for the eighth circuit in the case of Railway Co. v. Jarvi, 10 U. S. App. 439, 3 C. C. A. 433, 53 Fed. 65. In that case the plaintiff was a miner, who was injured by the fall of a large stone from the roof of the mine, and the question was whether the plaintiff had been reckless in not discovering or knowing the dangerous condition of the roof from which the stone fell. The learned judge, speaking of the obligation upon the servant, says:

"He cannot recklessly expose himself to known danger, or to a danger which an ordinarily prudent and intelligent man would, in his situation, have apprehended, and then recover of the master for an injury which his own recklessness has caused. * * * But the degrees of care in the use of a place in which work is to be done, or in the use of other instrumentalities for its performance, required of the master and servant in a particular case may be, and generally are, widely different. Each is required to exercise that degree of care in the performance of his duty which a reasonably prudent person would use under like circumstances; but the circumstances in which the master is placed are generally so widely different from those surrounding the servant, and the primary duty of using care to furnish a reasonably safe place for others is so much higher than the duty of the servant to use reasonable care to protect himself in a case where the primary duty of providing a safe place or safe machinery rests on the master, that a reasonably prudent person would ordinarily use a higher degree of care to keep the place of work reasonably safe, if placed in the position of the master who furnished it than if placed in that of the servant who occupies it."

See, also, Kane v. Railway Co., 128 U. S. 91–94, 9 Sup. Ct. 16; Railroad Co. v. McDade, 135 U. S. 554, 10 Sup. Ct. 1044; Railroad Co. v. Herbert, 116 U. S. 642, 6 Sup. Ct. 590.

Coming to apply these principles to the evidence disclosed by this record, the first important fact is that the floor of the north side of the shed had been in bad repair for several years. The company must be presumed to have had knowledge of this, through its proper officers. The plaintiff denied that he knew of the defects in the floor, and testified that he had been so few times in the north side of the shed as to make his ignorance of its condition possible and reasonable. The fact that the foreman swears that Norman was every day in the north side of the sheds and had been there several hundred times, merely produces a conflict between the foreman and Norman, which it was for the jury to decide.

The case made by the evidence for the plaintiff therefore was this: He received an injury when working in the sheds of the defendant as its employé. His injury was caused by the defective condition of the floor. The defendant company knew of this defective condition. Norman did not know of it. If he did not know it, he had no reason to expect that the moving of the truck upon the floor would cause the remaining bale to fall, and therefore, to kneel where he did kneel was not a voluntary or negligent exposure of himself to obvious injury. Manifestly, plaintiff had the right to submit to the jury the issue whether he was negligent or not.

The judgment of the circuit court is reversed, with directions to order a new trial.