ILLINOIS CENT. R. CO. v. BENTZ.

(Circuit Court of Appeals, Sixth Circuit. February 12, 1900.)

No. 734.

MASTER AND SERVANT—FELLOW SERVANTS—RAILROAD ENGINEER AND TELEGRAPH OPERATOR.

A telegraph operator at a railroad station, charged with duties in connection with the operation of trains on the road, and the engineers of such trains, are fellow servants at common law, and the railroad company is not liable for the death of an engineer in a collision, due to the negligence of an operator in failing to report the passing of a train at his station.[1]

In Error to the Circuit Court of the United States for the Western District of Tennessee.

This is a writ of error to review a judgment of the circuit court for the Western district of Tennessee in favor of Isabella Bentz against the Illinois Central Railroad Company. Isabella Bentz is the widow of Ed. Bentz, who was an engineer on a locomotive engine of one of the freight trains of the defendant company, and was killed by a collision between two trains of that company at a point two miles north of the town of Russell, in the state of Tennessee. This action was brought under the statute of Tennessee providing for damages for injury by wrongful death. The evidence disclosed the facts to be as follows: Bentz's train was freight train No. 84. The train with which it collided was freight train No. 81. Bentz's train was running north from Jackson, Tenn., towards Martin, Tenn., a distance of 53 miles. The only telegraph station open at night between Jackson and Martin was at Milan, 23 miles from Jackson. The train dispatcher was at Jackson. Bentz's train left Jackson at 2:40 a. m. on the morning of June 10, 1897, and proceeded north. It approached Milan about 20 minutes after 4. The engineer blew for the semaphore signal, which was set at red, and failed to receive the white signal in reply. He blew again when about 200 feet from it, and the trainmen testify that then the red signal turned to white. The telegraph operator denies that the signal was whistled for, or that the white light was signaled. However this may be, the train then proceeded north from Milan towards Martin, which was the next telegraph station open at night, and at a point two miles north of Russell, in going round a curve, collided with train No. 81, coming south. Bentz jumped to save his life, and was killed by the fall. The collision took place about 5:20 in the morning. At 4:30 that morning freight train 81 was reported to the train dispatcher as being at Martin, and orders for its proceeding were asked for. Thereupon the train dispatcher asked Loving, the telegraph operator at Milan, over the wire, whether train 84 had come in sight. Loving replied that it had not passed, and was not in sight. Thereupon the train dispatcher sent identical orders, one to Martin, to 81, and one to Milan, to 84, directing that the two trains meet at Idlewild, a point 10 or 12 miles north of Milan and 7 miles south of Russell. This order was acknowledged (or "O. K.'d," as the phrase

---

[1] As to who are fellow servants, see notes to Railroad Co. v. Smith, 8 C. C. A. 668; Railway Co. v. Johnston, 9 C. C. A. 596; Flippin v. Kimball, 31 C. C. A. 286.

is) by the telegraph operators at Milan and at Martin. The theory of the defendant company is that Bentz and the conductor in charge of his train ran through Milan in spite of the red signal and without waiting for the white light. At the conclusion of all the evidence, counsel for the defendant requested the court to charge the jury that from the evidence introduced it was apparent that the accident was caused either by the negligence of the telegraph operator at Milan, who was a fellow servant of Bentz, or by Bentz's own negligence, and that they must therefore return their verdict for the defendant. This the court refused. The jury, under the charge of the court, returned a verdict for plaintiff, on which judgment was entered.

C. G. Bond, for plaintiff in error.

S. D. Hays, for defendant in error.

Before TAFT, LURTON, and DAY, Circuit Judges.

TAFT, Circuit Judge (after stating the facts as above). If Bentz disregarded the red signal, and passed Milan without waiting until the white signal was shown him, it is not disputed that the resulting collision would have been due to his negligence, and that he could not recover from the company. The only other possible theory of the accident is that the telegraph operator gave the white signal to Bentz, the engineer, as the men on Bentz's train testify he did, and that, when he was asked a few minutes later by the train dispatcher at Jackson whether the train had passed, he negligently forgot the fact. If he had then remembered that Bentz's train had passed his station 15 minutes before, and had so informed the operator, it would have been entirely within the power of the train dispatcher either to hold 81 at Martin, or to permit it to run on to Greenfield, a distance of nine miles, and there wait the coming of Bentz's train. The failure of the telegraph operator to keep the train dispatcher advised as to the whereabouts of Bentz's train was the cause of the collision, and the only cause, unless Bentz contributed to it by his own negligence, as already explained. We have already decided in this court, in the case of Railroad Co. v. Camp, 31 U. S. App. 213, 13 C. C. A. 233, 65 Fed. 952, that at the common law (and there is no statute in Tennessee) a telegraph operator is the fellow servant of an engineer. See, also, Railroad Co. v. Clark, 16 U. S. App. 17, 6 C. C. A. 281, 57 Fed. 125; Slater v. Jewett, 85 N. Y. 61; Sutherland v. Railroad Co., 125 N. Y. 737, 26 N. E. 609; Reiser v. Pennsylvania Co., 152 Pa. St. 38, 25 Atl. 175; McKaig v. Railroad Co. (C. C.) 42 Fed. 288. The fact that the supreme court of Tennessee, in the case of Railroad Co. v. De Armond, 86 Tenn. 73, 5 S. W. 600, had taken another view of this question, under the department theory of fellow servants, which prevails in the state courts of that state, was noted in the Camp Case, and the view of the Tennessee court was dissented from. If the De Armond Case is the authority which was followed by the learned judge at the circuit, the Camp Case could not have been called to his attention. The jury, on the facts of the case, because the injury occurred through the negligence of a fellow servant of the plaintiff's husband, should have been directed to bring in a verdict for the defendant. The judgment of the court below is reversed, with directions to order a new trial.