## BALTIMORE & O. R. CO. v. DOTY.

(Circuit Court of Appeals, Sixth Circuit. December 29, 1904.)

No. 1,309.

1. MASTER AND SERVANT—RAILROADS—ENGINE HOSTLERS—INJURIES—PETITION.
   Where a petition for injuries to an engine hostler alleged that plaintiff, being ordered to take a particular engine to a coal chute by the boss hostler, communicated his instructions to a fellow hostler then on the engine, and himself went ahead of the engine to flag and switch it, "as it was his duty to do," and while so engaged his foot was caught in a loosely covered trench, so that he fell toward the track, and was struck by the engine and injured; that he did not know of the existence of the trench, and could not have seen the same by the exercise of ordinary care; and that defendant was guilty of negligence in not causing the trench to be carefully covered or guarded, and in not warning plaintiff of its existence, etc.—it was not demurrable for want of facts.

2. SAME—FEDERAL COURTS—JURISDICTION.
   Where a petition in an action in the federal court sitting in Ohio for injuries to a servant alleged that plaintiff was a citizen of Ohio, and that defendant was a citizen of Maryland, it alleged facts sufficient to sustain the jurisdiction of the federal court, without an allegation that either party resided in the district where the suit was brought.

3. SAME—VENUE—WAIVER.
   The statute prescribing the place where actions in the federal courts may be brought, having reference to the residence of the parties, accords a privilege only, which is waived by defendant uniting a plea to the merits with a plea claiming his privilege to be sued in another district.

4. SAME—ENGINE HOSTLER—WATCHMAN—EXCHANGE OF DUTIES.
   Where plaintiff, an engine hostler, who, by the rules of the railroad company, was required to ride on the engines, exchanged duties with a watchman whom he found in possession of an engine he had been ordered to shift, and permitted the watchman to run the engine while plaintiff ran

---

¶ 2. Diverse citizenship as a ground of federal jurisdiction, see notes to Shipp v. Williams, 10 C. C. A. 249; Mason v. Dullagham, 27 C. C. A. 298.

ahead to flag and switch it, and, in so doing, he was injured by falling into an insufficiently covered steam box, the existence of which, though well known to workmen in the yards, was unknown to plaintiff, he was not entitled to recover.

5. SAME—CUSTOM—EVIDENCE.

In an action for injuries to an engine hostler while performing the duties of a watchman with whom he had exchanged work, evidence *held* insufficient to sustain a finding that there was a custom in the railroad yard where plaintiff worked for engine hostlers to perform the duties of the watchman under similar circumstances.

6. SAME—INSTRUCTIONS.

Where plaintiff, an engine hostler, was injured while performing the duties of a watchman, an instruction that if plaintiff was not in the performance of duty, if he was not entirely outside of his duty, so as to occupy practically the position of a stranger, a trespasser, then he could not claim the benefit of the requirement that the railroad exercise reasonable care to make the place safe, etc., was erroneous.

In Error to the Circuit Court of the United States for the Southern District of Ohio.

F. A. Durban, for plaintiff in error.
Ulric Sloane, for defendant in error.

Before LURTON, SEVERENS, and RICHARDS, Circuit Judges.

SEVERENS, Circuit Judge. The plaintiff, who is the defendant in error here, brought suit in the circuit court to recover damages resulting to him in consequence of the alleged negligence of the railroad company while he was in its employment as a hostler in its yards at Newark, Ohio. A hostler, in railway parlance, is one employed in taking the locomotives as they come into the yard, and are left by the engineer who has been in charge, to the roundhouse, or other place of shelter, security, or repairs, or for supplies, and bringing them out again, as occasion requires, to the place where the engineer assumes charge for the purpose of making his trip. He is also more or less employed in conducting the engine about the yard for the purpose of shifting cars in making up trains and in distributing them. In respect to the citizenship and residence of the parties, the allegation is that "the plaintiff, Frank C. Doty, is a citizen of the state of Ohio, and the defendant, the Baltimore & Ohio Railroad Company, is a corporation duly organized, incorporated, and existing under and by virtue of the laws of the state of Maryland, and is a citizen of the state of Maryland." In his petition the plaintiff states that on April 22, 1902, while he was thus employed as a hostler in that yard, and under the direction of a boss hostler, whose orders he was bound to obey, he was ordered and directed by the said boss hostler to cause a certain locomotive engine then standing on the north side of a coal chute to be brought to the south side of said chute and set for coaling; that he went to the engine and communicated his instructions to a fellow hostler then on the engine, and himself went ahead of said engine for the purpose of flagging it, if necessary, at a switch over which the engine would have to pass, and of throwing the switch for the engine, "as it was his duty to do"; that while he was thus proceeding on the north side of the track, and before he got to the switch, his foot was caught in a hole or

trench loosely covered with round sticks, so that he fell toward the track, and was struck by the engine and seriously injured; that he did not know of the existence of said hole or trench, and could not by ordinary care have seen the same. And he charges that "the defendant was guilty of negligence, which proximately caused his injury as aforesaid, in not causing said hole or trench to be securely covered or in some way guarded, and in not warning him of its existence, location, and dangerous condition at and before the time of his said accident." The defendant appeared and demurred to the petition upon these grounds:

"(1) Said petition does not state facts sufficient to constitute a cause of action in favor of the said plaintiff and against the defendant herein. (2) The said petition does not show that this court has jurisdiction over the parties herein, or the cause of action set forth in said petition."

The demurrer was overruled, and the defendant excepted. In pursuance of leave, the defendant answered, setting up as grounds of defense that the plaintiff at the time of the injury was under a duty, as well as specific instructions, to ride upon the engine, and not to be walking in front of it, and that he was violating this duty, as well as his specific instructions, in being at the place where the accident occurred. At the trial it was proven that the defendant employed the plaintiff as a hostler some three months before the accident, and that he had continued under that employment to serve in the yard at Newark to that time; that about 9 o'clock in the evening, and shortly before the accident occurred, the plaintiff was directed by Mollinix, an assistant to the foreman or boss hostler, to take this engine, then standing on the north side of the coal chute, around to the south side. To do this, it was necessary to take the engine some distance eastward over the track on which it stood to a switch, where it would be transferred to the track running to the south side of the chute. On coming to the engine, the plaintiff found on or near it an engine watchman, named Guensler, to whom he communicated the directions he had received from Mollinix about taking the engine around to the south side of the chute. Thereupon the two proceeded on the engine eastward, the watchman handling the engine. As they approached the switch, the plaintiff got down from the engine, and, with a lantern in his hand, walked along the north side of the track, in advance of the engine, until he came to a sunken box running parallel with the track, and three or four feet distant therefrom, a few feet deep, six or eight feet long, and two or three feet wide, planked up at the ends and sides; its top being a few inches above the surface of the ground, and covered over with plank or boards. The pit thus constructed was used as a receptacle for spent steam and water coming from a shop not far off. The plaintiff went over this box, and, either from a displacement of the plank or boards of the cover, or their weakness from decay or other cause, his foot went down through it, and his body was so turned that the advancing engine struck him in the back and side, and inflicted the injury for which he sues. It further appeared that the proper duties of an engine watchman, when not affected by any custom or usage, were to provide the engines with water and fuel, get up steam, and have them ready for starting, and further to do the yard switching necessary for

them to be moved to their destination into the charge of the engineer, or about the yard for local purposes. In regard to all these things there was no substantial controversy. But the following questions were in dispute—that is to say, whether the defendant was guilty of negligence in not maintaining the covering of the box above mentioned in a safe condition; whether the plaintiff was guilty of contributory negligence in failing to know of the existence of the box or its condition, or seeing it before walking over it; and whether there was such a prevailing custom in that yard for a hostler and an engine watchman to perform each the duties of the other as would justify the plaintiff in leaving the conduct of the engine in the hands of the watchman, and himself performing the duties of switchman.

With respect to the questions raised by the demurrer there is no serious difficulty. The first ground is, generally, that the petition does not state a cause of action, and the objection is not leveled at any specific defect in the mode of stating the substantial facts. Referring to the allegations of the petition above set forth, we see no reason for doubting that they embody substantive facts which are prima facie sufficient to constitute a cause of action. It is not necessary that the plaintiff, in his petition, should negative defenses which the other party may advance, or should exclude his case from possible exceptions. In regard to the jurisdiction, it is urged that the petition fails to state that the plaintiff is a resident, and more especially that it fails to state that the defendant is a resident, of the district in which the suit is brought. But the petition does state that the plaintiff is a citizen of Ohio, and that the defendant is a citizen of Maryland. That is enough to found the jurisdiction. The provision of law which prescribes the place where the action may be brought, having reference to the residence of parties, concerns only matters of convenience and privilege, which a party may waive, and which he does waive when, as here, he appears and unites a demurrer to the merits with a plea claiming his privilege. St. Louis & S. F. R. Co. v. McBride, 141 U. S. 127, 11 Sup. Ct. 982, 35 L. Ed. 659.

Coming then to the trial of the issues of fact, the record shows that, at the close of the testimony, counsel for the defendant moved the court for an instruction to the jury to return a verdict for that party. This the court declined to do, assigning reasons presently to be stated. The defendant excepted to the refusal, and thereupon presented several requests for instructions, which were refused, and which are also the subjects of assignments of error. The assignment of error in refusing the defendant's request for peremptory instructions is maintained in argument upon several grounds—first, that it was not shown that any defect existed in the box before the accident; second, that, if any defect did exist, no prior knowledge or opportunity of knowledge by the exercise of ordinary care on the part of defendant was shown; third, that the plaintiff had equal means of knowledge with the defendant, and that his own evidence shows that he did not use his opportunity of knowledge; and, fourth, that if the defendant was negligent in not maintaining the box in safe condition, and the plaintiff was injured in consequence, he was performing duties not required or expected of him, and was violating his general and specific instructions. In respect

of the first and third of these grounds, without further detail of the. evidence, we are of opinion that they presented questions for the jury. With respect to the second, we have grave doubt, for the evidence did not clearly show for how long a period before the accident the defect in the box had existed, and the burden was on the plaintiff to prove that it had existed so long that the railroad company ought to have had knowledge of it. In Southern Ry. Co. v. Rhodes, 86 Fed. 422, 30 C. C. A. 157, this court reversed the judgment of the lower court for the reason that although there was some proof of negligence in certain persons, which imposed a duty on the company to correct it, yet there was no substantial evidence that the negligent practice had existed for any length of time. But having regard to the fourth, we cannot avoid the conclusion that the instruction should have been granted. It was shown, and, indeed, was alleged in the petition, that the defendant employed the plaintiff as a hostler. He was not employed to do the work of an engine watchman, which belonged to another class of employés. It is a matter of common knowledge that the operation of railroads is a complex and dangerous business. For this reason, as has been often observed, a system of rules and regulations is indispensable to its proper and safe conduct—indispensable alike to successful management and the safety of employés. The duty which is thereby devolved upon the employer is recognized and affirmed by former decisions of this court. Railroad Co. v. Camp, 65 Fed. 952, 13 C. C. A. 233, per Taft, J.; Lake Erie & W. R. Co. v. Craig, 80 Fed. 488, 495, 25 C. C. A. 585, where Judge Clark refers to other authorities. And it has been held that a railroad company which fails to provide proper and reasonably adequate regulations is guilty of actionable negligence. In 20 Am. & Eng. Encycl. of Law, 101 (2d Ed.), it is said:

"It is the duty of persons or corporations having many men in their employ, and carrying on a dangerous and complicated business, to make rules which, if observed, will afford reasonable protection to the employés against the dangers incident to the performance of their respective duties. Failure to do so is negligence, and for injuries to an employé resulting from such failure of duty the master is liable."

And numerous authorities, English and American, are cited in support of the statement.

It is a necessary counterpart of this requirement that the company's employés shall observe and conform to such regulations. The obligations are mutual. And if the employé will not conform to them to the extent that he reasonably can, and suffers an injury not wantonly inflicted, he forfeits his claim to protection from his employer, and must himself bear the consequences. It is equally necessary in such business that the several duties of the service shall be distributed and assigned to different classes of employés according to their qualifications. Otherwise confusion in operation and danger from lack of special qualification for the particular service must ensue. In short, all those reasons which support the expediency and necessity of the requirement of rules and regulations apply with full force to the specification of duties, and the classification of employés who are to perform them. The wages paid vary according to the nature of the employment, whether of special skill and ability, or sometimes of special danger. The duty of the em-

ployer to provide a safe place for the workman is affected by the skill and experience in that line of work of those whom the employer associates with him. The obligation of the employer to provide a safe place for his employés is one which springs out of the contract of employment, and is personal to each. It derives its character and limitations from the principal contract, and the relations of the parties thereby assumed. The obligation to those of each class of employés is different from that to another, and often it is different toward the several persons in the same class. Moreover, the employer is entitled to have his work done by those to whom it is assigned. From their familiarity with it and the conditions in which it is performed, they would be more likely to know and guard against defects and dangers which are presented to them; and the employé is better qualified to do the work with safety to himself than one in another class would be. The case before us presents an apt illustration. The plaintiff testified that he did not know of the existence of the box until the moment of the accident. A switchman working in the yard could hardly have failed to have known it. All these considerations make it the duty of the employé to confine himself to the scope of his employment, unless there arise some emergency not contemplated. And hence the rule of law is that if the employé, without necessity, undertakes duties to which he is not assigned, and are without the scope of his employment, he does so at his own risk, and has not that protection from the negligence of the employer which one would have who is assigned to the discharge of that duty. The rule is correctly stated in 20 Am. & Eng. Encycl. of Law, 131, under the title "Master and Servant," as follows:

"When a servant voluntarily, and without the order of the master or vice principal, attempts the performance of hazardous work outside the scope of his employment, he cannot recover for injuries sustained while so doing."

And numerous decisions are cited in support of the doctrine.

How the case would stand if the employé does an act under the positive command of his immediate superior is a different question, which we are not required to decide.

Applying these principles to the case at bar, Doty, who was employed to perform the duties of a hostler, and being under no necessity to perform the duties of an engine watchman, was not in his proper place when he received his injury, and would have no remedy against his employer for the alleged negligence of the latter in failing to maintain the box in proper condition. There was no necessity for his leaving his proper place, on the engine, and performing the duty of the watchman; and, if he had remained where his own duty required, he would have suffered no injury, and perhaps the watchman, from his presumably better knowledge of the situation, might have avoided an accident to himself.

But is is said that there was a custom in this yard for the hostler to perform the duties of the watchman, and that he was therefore entitled to the protection that one in that service should have. And it is no doubt the settled law that if such a custom had been established by the habitual practice of the employés, known and assented to by the employer, so that the scheme of the employment had been displaced and

abandoned, the rule contended for would apply. But the consequences of the substitution of such a custom, adopted without right by the employés in place of the order established by the regulations of the employer, make it necessary to prove that the practice was habitual, and not occasional, and was known, or ought to have been known, by the employer, and was assented to by him. A custom or usage is the result of a long-continued and substantially uniform practice. The evidence contained in this bill of exceptions does, indeed, tend to prove that sometimes, during a short period of time before this accident (for how long does not appear), when two hostlers were riding on an engine, and no watchman was with them, one of the hostlers would get off and flag the engine and throw the switch; and there was evidence that occasionally, when a hostler and a watchman were riding together, the hostler allowed the watchman to handle the engine, and himself went forward and did the flagging and switching, and that at one time the assistant boss hostler stated to the plaintiff that Guensler, the watchman, had authority to run engines. But there was no evidence that this practice, if we call it such, was uniform or habitual, or was known to the company, or any superior officer thereof, unless it is to be imputed from the fact of these occurrences. Nor is it shown that the company assented, unless such assent could fairly be presumed from the fact that no objection to such a practice was expressed. No authority to the assistant boss hostler to make such a statement as the plaintiff imputes to him is shown. It was the expression of his own opinion, and the plaintiff had no right to rely upon it. His contract was with his employer, and it could not be frittered away by the statement of another employé engaged in the common service. In Atchison, T. & S. F. R. Co. v. Reesman, 60 Fed. 370, 9 C. C. A. 20, 23 L. R. A. 768, it was held that a brakeman could not justify himself for disregarding a rule requiring him to be on the top of the car, in a case where he had been standing on the platform with the knowledge and assent of the conductor when he received the injury. Said Mr. Justice Brewer, who delivered the opinion of the court:

"The duty of obedience to the rules of the employer is one resting alike upon all employés; and, when an employé claims to recover from his employer for injuries resulting through the latter's negligence, he cannot escape the consequences of his own act contributing to such injury—an act done in known violation of the rules of such employer—on the ground that his immediate superintendent knew and assented to such act of violation."

And in summing up the conclusion of his discussion, he added:

"It is unnecessary to pursue this matter further. It may be laid down as a general rule that the mere knowledge and assent of his immediate superior to a violation by an employé of a known rule of the company—the employer—will not, as a matter of law, relieve such employé from the consequences of such violation."

The assistant boss hostler denies having ever made the statement which the plaintiff testifies to, but that only raised a question for the jury, as to whether he did or not. If, upon the evidence shown by this record, a jury should find that there was a custom in the yard which would justify him in going outside the scope of his employment upon the occasion in question, we think it would be the duty of the

court to set aside a verdict resting upon such finding. In such circumstances, the duty of the court to take the question from the jury is clear. And in this case there was no other basis for the verdict which the jury rendered than the finding of a custom which justified the plaintiff in thus going outside the duties of his employment.

In denying the request of the defendant for peremptory instructions, the learned trial judge said:

"In this case, however, it cannot be said that the disregard of the rule, if you speak of it as a rule, was the direct cause of the injury. Whether he was off the engine—whether properly so or not—the question is still left open as to whether the company was guilty of negligence in leaving this box in such a condition as that any one in the yard might be injured in passing by."

Subsequently defendant's counsel requested the court to charge the jury as follows:

"The evidence in this case fairly shows that, at the time of the injury complained of, the plaintiff, contrary to instructions received from his superior, had exchanged places and duties with an engine watcher—was engaged in performing the duties of the watcher, while the watcher was in the plaintiff's place performing the duties which plaintiff should have performed—and for this reason the plaintiff is not entitled to recover, and your verdict must be for the defendant."

This request was refused, and the substance was not given in the court's instructions in such manner as to give the defendant the benefit of it. For the reasons we have given, we think the instruction should have been given, but, as it amounts to the same thing as the request to direct the verdict, there is no occasion for discussing it further. It seems that the court, in refusing the motion to direct the verdict, was of opinion that it was immaterial whether the plaintiff was acting within the line of his duties when he was hurt, or not, and that the question still remained open "as to whether the company was guilty of negligence in leaving this box in such a condition as that any one in the yard might be injured in passing by." But that question did not remain open if the plaintiff was improperly off the engine. It necessarily followed that, if he was not discharging his proper duties, he was at fault, and that fault contributed to his injury. Certain other specific requests for instructions were made on behalf of the defendant, and were refused in terms. But such of these as are set out in the record were, as we think, substantially given in the general charge of the court, and we need not express any opinion upon them.

With reference to the defendant's contention that the plaintiff was not in the line of his duty when he was hurt, the court charged the jury as follows:

"If Doty was not in the performance of duty—if he was entirely outside of his duty, so as to occupy practically the position of a stranger, a trespasser—then he could not claim the benefit of the rule which required the railroad company to exercise ordinary and reasonable care to make the place safe; in other words, the railroad company would owe him no duty to make the place safe by putting the box in repair and maintaining it in repair. But you must determine from the evidence whether he was in the line of his duty, or not." And again: "Now, you must determine, gentlemen, from the evidence before you, whether he was within his duty, in accordance with the practice, or whether he was entirely outside of his duty, so as to occupy practically the position of a trespasser."

These portions of the charge were excepted to by the defendant, and error is assigned thereon. It is complained, and we think justly, that this statement of the character which the plaintiff must have taken on, in order to free him from the consequences of his departure from the line of his duties, was prejudicial to the defendant. It is quite probable that the jury would take the word "trespasser" in its common meaning of a positive wrongdoer, and not merely one who is simply negligent, or commits an error prejudicial to another, but without willfulness. It was perhaps inadvertent phraseology, but it is easy to see that the language employed would be very likely to produce a harmful impression upon the minds of the jury. We think this assignment of error should also be sustained.

The judgment should be reversed, with costs, and a new trial awarded.