### DEYE v. LODGE & SHIPLEY MACH. TOOL CO.

(Circuit Court of Appeals, Sixth Circuit. May 2, 1905.)

#### No. 1,377.

**1. MASTER AND SERVANT—PLACE TO WORK—ASSUMED RISK FROM NEGLIGENCE OF FELLOW SERVANTS.**

Where the place in which an employé was required to work, and where he was injured, was only dangerous because of the negligence of his fellow workmen in carrying on the work, the risk from such danger was one which was assumed, and the master cannot be held liable for the injury.

[Ed. Note.—For cases in point, see vol. 34, Cent. Dig. Master and Servant, §§ 567–573.

Assumption of risk incident to employment, see note to Chesapeake & O. R. Co. v. Hennessey, 38 C. C. A. 314.]

**2. SAME.**

A company engaged in making heavy machine tools caused lathe beds, after they had been cast, to be taken to the finishing shop, where they were finished and cleaned, and piled up until wanted for use by the employés there, under directions of a foreman, who was generally competent. *Held*, that the company owed no personal duty, as a master, to supervise the manner in which the beds were piled, and could not be held liable for an injury to a fellow servant of the foreman, caused by the slipping of one of the castings from a pile near which he was working, and which was alleged to have been improperly built, on the theory that he was not furnished with a reasonably safe place to work; the piling of the castings being a detail of the work itself, the risk from which was assumed by the workman.

In Error to the Circuit Court of the United States for the Southern District of Ohio.

Action for personal injuries sustained by plaintiff in error while in the employment of the defendant in error. Upon all of the evidence, there was a direction for defendant in error. Deye's injury was sustained while engaged, with others, in moving a large iron casting, called a "lathe bed," by the falling of one or more similar castings from a pile adjacent to the casting being removed. The defendant company is a corporation engaged in making machine tools. Its business was divided into several departments. These lathe beds were heavy iron castings, of different sizes, and weighing from one to six

thousand pounds each, and ranged from 10 to 20 feet in length, and from 1 to 2 feet in width and thickness. They were of cast iron, hollow in the center, with brackets across the central space. On top were two V's or shears, an inch or more in width, and half inch in height, running along on each side of the bed, and projecting above the general level of the bed, upon which the parts of the completed machine tool slid. They were delivered by wagon at the "casting and cleaning department," where they were received by a receiving clerk, who, with the assistance of the wagoner, and by means of a crane, lifted them off of the wagon and piled them one on top of another, in piles of from three to six, sometimes bottom to bottom, top to top, just as they came off the wagon. These piles were in tiers on the north side of the building. One Lutz was foreman of this casting and cleaning department, and from time to time he would have the castings taken from the piles and cleaned, and then put back on the pile. This cleaning consisted in chipping off burrs and smoothing them with an emery wheel. As a cleaned bed was needed in the machine shop, Lutz would have one of them taken from its pile and removed by means of a crane into the machine shop. Deye was a workman in this casting and cleaning department, under Lutz, as foreman. He had been there at work for about five weeks, and had frequently seen these castings received and piled and removed for cleaning or to be built up in the machine shop, though he had never himself been called upon to handle them or pile them until the occasion of his hurt. While subject to the orders of Lutz, and liable to be put to any kind of work in his department, he had theretofore been engaged only in cleaning small castings with acid, and in washing the rags used for that purpose. On the morning of his injury he was called upon by Lutz to assist him in removing a cleaned lathe bed, needed in the machine shop, from a pile containing two or three others. The pile was one of a tier, the one next containing five or six such castings. A chain was fastened around the one to be moved, and the chain fastened to the crane. While Deye was pulling to lift the casting, and after it had been raised slightly above those below, one or more of the castings upon the adjacent higher pile slid off and against the one being raised, causing it to swing and crush Deye against the wall near which he was working.

Harlan Cleveland, for plaintiff in error.

E. W. Strong, for defendant in error.

Before LURTON, SEVERENS, and RICHARDS, Circuit Judges.

LURTON, Circuit Judge, after making the foregoing statement of the case, delivered the opinion of the court.

The general fitness and competency of Lutz, the foreman, who is said to have negligently piled the castings which fell and injured Deye, was not questioned. That Lutz and Deye were fellow servants, and that each assumed, as part of the risk of the business, the risk of the negligence of the other and of the other workmen engaged in and about the castings and cleaning branch of the defendant's business, is equally indisputable. The case must turn, therefore, upon the question as to whether the place of work was dangerous through neglect of any personal duty imposed by law upon the employer. The contention is that the place where Deye was called upon to work when hurt was a dangerous place, by reason of its proximity to a pile of castings which were liable to slip and fall because not properly piled, with strips of wood between them. The place was safe enough, except in so far as it was made unsafe by the system or manner in which these castings were piled. There was evidence tending to show that these beds would not have been so liable to slip and fall if sticks of wood had been placed between

137 F.—31

the castings when being piled up, and that it was the practice in some shops and foundries to interpose pieces of wood to guard against slipping or falling. There was also evidence tending to show that no wood had ever been used or supplied for that purpose, nor any direction given by the defendant in error concerning the method of piling such castings. No other instance of the falling of such castings in this or any other shop was shown, nor did the foreman make any request for strips of wood to use when stacking them up, although he testified that he knew the danger and practice of using such strips in other shops in which he had worked.

Was the defendant company under any duty to supervise the method of piling such castings, or was that a detail of the business, which might be left to the judgment of the men whose business it was to receive, pile, and handle them? The system or manner in which they were piled when received from the foundry, and kept until needed for use in the machine shop, was one adopted by Lutz and those who were his fellow servants in this branch of the business. The case must therefore turn upon the question as to whether the defendant company, as the employer, owed any nondelegable personal duty in respect to supervising the methods adopted by Lutz and his fellow workmen, of whom Deye was one, for stacking, storing, or piling these rough castings.

That an employer engaged in a complicated and dangerous business is under obligation to prescribe rules for its orderly and safe conduct is a well-settled principle of the law of master and servant. B. & O. R. R. v. Doty (C. C. A.) 133 Fed. 866; Woods, Law of Master & Servant, § 403; Shearman & Redfield on Negligence, § 202; Slater v. Jewett, 85 N. Y. 61, 39 Am. Rep. 627. But this rule presupposes a complicated business, involving danger to those conducting it unless it be managed upon some prescribed system. A railway business is an example. The general business conducted by the defendant corporation may, in some of its aspects, be one of such complexity and danger as to require its conduct according to system or rule, having regard to the safety of its servants. But the matter we have to deal with is the simple question of receiving and piling rough, heavy castings in a room devoted to their storage until cleaned and needed in the machine shop. These castings had been made in the foundry. The next step was their transportation from the foundry to the place where they were to be kept and cleaned, and piled to wait their removal to the machine shop, to be there converted into a great tool by skilled men. The work which Lutz and the men under him, including Deye, were engaged to do, was the work of receiving, piling, and cleaning these and other castings; and, if they were negligently piled, it was because a part of the very work which they were employed to do was done in a negligent manner. It is true that Deye had not helped receive or pile these lathe beds; true, he had not before been required to assist in lifting one for removal to the machine shop. Nevertheless his employment involved every phase of the work superintended by Lutz. We say, therefore, that the mere detail of how these castings should be piled was a part performance of the work itself, the risk

of which he had assumed. Lutz was an experienced foreman. He was, in law, the fellow servant of the plaintiff; and his neglect, if his failure to properly pile these castings be regarded as negligence, was the negligence of a fellow servant, unless the method or manner of piling them constituted so complex or dangerous a matter as to require the active and personal direction or supervision of the master. But we are not able to bring ourselves to the conclusion that the circuit judge erred in holding that there was anything in the nature of this part of the work intrusted to Lutz and his fellow servants as to make it the personal duty of the defendant company to lay down a rule or system for piling them, or to personally supervise the manner in which the men engaged in the work should do that part of it. If such a matter is not a detail of the general business which may be intrusted to the judgment and common sense of the men whose business it was to receive, pile, and handle such castings, there is no detail which indirectly involves the safety of the place where work is being carried on which must not be personally supervised. Unless the business be of such a complex and dangerous character as to require that it shall be conducted upon a system or scheme, in order to secure the orderly conduct of the business and the safety of those engaged in it, the master's obligation to supply a safe place for his work to be done, and to keep it safe, does not impose the duty of always keeping it in a safe condition so far as its safety depends upon the proper performance of the very work which his servants have there undertaken to do. If a negligent manner of doing the work makes the place less safe, that is one of the risks which all engaged in the work have assumed as a risk of the occupation. If it was the duty of the defendant company to see that Lutz used sticks in piling these castings while waiting the next step in the work upon them, it would be hard to say why it would not be equally the duty of an employer to supervise the temporary piling or storing of brick or lumber or stone or barrels or boxes containing the material to be used by the men upon the premises. Matters of this kind are not so complex or dangerous as to demand the direct supervision of the master, but are details which, from a reasonable consideration of the rule of master and servant, may be and must be left to the common sense of the men doing the work, as one of the risks of the business. Cullen v. Norton, 126 N. Y. 1, 6, 26 N. E. 905; Morgan v. Hudson River Ore Co., 133 N. Y. 666, 31 N. E. 234; Perry v. Rogers, 157 N. Y. 251, 51 N. E. 1021. Although it is the duty of a railway company to give correct orders for the running of its trains, and the train dispatcher stands for and represents the master in this matter, yet, if he gives an order, which brings on a collision, by reason of the negligence of a local telegraph operator in falsely reporting the passing of a train, the company is not liable to trainmen injured in the collision, such local telegraph operator being, in respect to the matter, the fellow servant of the men injured. Ill. Cent. Ry. Co. v. Bentz, 40 C. C. A. 56, 99 Fed. 657; N. P. R. Co. v. Dixon, 194 U. S. 338, 24 Sup. Ct. 683, 48 L. Ed. 1006.

The conclusion we reach is that the place where the plaintiff was injured was only dangerous because of the negligence of his fellow workmen in the manner of carrying on the work, the risks of which he had assumed. Armour v. Hahn, 111 U. S. 313, 318, 4 Sup. Ct. 433, 28 L. Ed. 440; Finalyson v. Utica Mining Co., 67 Fed. 507, 14 C. C. A. 492; Galow v. C., M. & St. P. Ry. Co., 131 Fed. 242, 65 C. C. A. 507; Cleveland, etc., Ry. Co. v. Brown, 73 Fed. 970, 974, 20 C. C. A. 147; Liermann v. Milwaukee Dock Co., 110 Wis. 599, 86 N. W. 182. Norman v. Wabash R. Co., 62 Fed. 727, 10 C. C. A. 617, was a case of a floor defective and dangerous, not by reason of the negligent manner of fellow workmen in piling articles upon it, but because the floor had been negligently suffered to get out of repair. The bale of cotton fell upon the plaintiff not because it had been carelessly piled or stored, but because there was a defective floor, which was depressed by the weight of the workmen, and jostled the bale over. The place was an unsafe one, and the only defense was the supposed obviousness of the danger. For the purposes of this case, we have assumed that the danger that this pile of castings would fall upon slight provocation was not so obvious as to charge the plaintiff with notice. We rest the case where the district judge placed it—upon the point that, if the castings were negligently piled, the negligence was that of a fellow servant.

Judgment affirmed.